# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRENDA DESALIS,<br>        Plaintiff,<br><br>v.<br><br>NATIONWIDE PROPERTY AND<br>CASUALTY INSURANCE COMPANY,<br>        Defendant. | CIVIL ACTION<br><br><br><br>NO. 20-1771 |

## MEMORANDUM OPINION

Plaintiff Brenda Desalis has sued Defendant Nationwide Property and Casualty Insurance Company ("Nationwide" or "Defendant") for breach of its contractual obligations under a Nationwide insurance policy ("the Policy") and for acting in bad faith in violation of 42 Pa. C.S. § 8371. Defendant now moves for summary judgment on the bad faith claim only. It has also moved to preclude the testimony of Plaintiff's expert witness whose report focuses on the bad faith claim.

### I. FACTS

Plaintiff is the named insured under a Property and Casualty insurance policy issued by Nationwide which covers her rowhouse located in South Philadelphia. On November 18, 2019 – and the dates are of particular importance here because the kernel of her action is that Nationwide delayed payment under the Policy – a fire in a nearby building caused fire and severe smoke damage to her home. To represent her in pursuing an insurance claim, Plaintiff retained Royal Adjustment Group ("Royal"), which reported the loss to Nationwide three days after the fire. Nationwide assigned the claim to insurance adjuster Timothy Todd, who quickly confirmed that Plaintiff's insurance policy covered the loss. Todd conducted a site inspection on behalf of Nationwide on December 5, 2019, the earliest date offered by Royal for the inspection. He

began drafting a dwelling damages estimate – that is, the estimate of the damage to the physical structure of Plaintiff's property – on the same day.

Seven business days later Nationwide issued a $15,000 advance payment to Plaintiff for the dwelling damages. On the same day Royal informed Todd that soot had been discovered behind interior partition walls in the Property, expanding the scope of the dwelling damages. Thereafter, Nationwide issued $2950 monthly payments for additional living expenses to cover the costs of Plaintiff's displacement from her home. Todd completed his preliminary estimate of the dwelling damages on February 12, 2020, and submitted it to his manager for review. Todd testified during his deposition that this review entailed "a back and forth revision" process in which he made changes to the estimate on his manager's request, and the "final estimate" was the version "[a]fter the revisions were accepted and approved by [his] immediate manager." On or about February 26, 2020, Royal submitted documents to Todd for the first time pertaining to damage to the property's roof, and requested that Nationwide cover the cost of the roof's replacement. Todd agreed that Nationwide would cover this cost without conducting an additional site inspection.

On March 20, 2020, Nationwide approved Todd's estimate, and four days later issued a supplementary payment for the dwelling damages in the amount of $57,758.66. On May 6, 2020, Nationwide issued another payment for damages to Plaintiff's personal property in the amount of $7,640.40. In aggregate, Nationwide has paid a total of $103,999.06 under the Policy.

## II. LEGAL STANDARDS

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable

jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). "The moving party is entitled to a judgment as a matter of law [where] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

Claims of bad faith brought under 42 Pa. C.S. § 8371 must be proven by clear and convincing evidence. *See Rancosky v. Washington Nat'l Ins. Co.*, 642 Pa. 153, 156 (2017). This standard "requires that the plaintiff show that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (internal quotation marks and citation omitted). Accordingly, "the plaintiff's burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial." *Id.* (citation omitted).

### III. ANALYSIS

Pennsylvania's bad faith statute, authorizes the recovery of interest on the amount of an insurance claim, punitive damages, and attorney's fees from the insurer "[i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured." 42 Pa. C.S. § 8371. In *Rancosky*, the Pennsylvania Supreme Court premised recovery under the statute on plaintiff's presentation of "clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." 642 Pa. at 156. "Bad faith

3

claims are fact specific and depend on the conduct of the insurer *vis à vis* the insured." *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa. Super. 2006) (citation omitted).

An evaluation of whether the insurer did not have a reasonable basis for denying benefits under the policy requires "an objective inquiry into whether a reasonable insurer would have denied payment of the claim under the facts and circumstances presented." *Rancosky*, 642 Pa. at 170 (citation omitted). Insurer conduct actionable under the statute is not limited to outright denial of claims, however, and "[u]nder Pennsylvania law, a bad faith insurance practice can include an unreasonable delay in handling claims." *Thomer v. Allstate Ins. Co.*, 790 F.Supp.2d 360, 370 (E.D. Pa. 2011) (citation omitted). To succeed on a statutory bad faith claim premised on an insurer's delay, the plaintiff must establish that "the delay is attributable to the defendant, that the defendant had no reasonable basis for the actions it undertook which resulted in the delay, and that the defendant knew or recklessly disregarded the fact that it had no reasonable basis to deny payment." *Id.* (quotation marks and citations omitted); *see also, e.g.*, *Mirarchi v. Seneca Specialty Ins. Co.*, 564 F.App'x 652, 655-56 (3d Cir. 2014); *Williams v. Liberty Mut. Ins.*, 2018 WL 2332019, at *3 (E.D. Pa. May 23, 2018).

"While delay is a relevant factor in determining whether the insurer has acted in bad faith, a long period of delay between demand and settlement does not, on its own, necessarily constitute bad faith." *Thomer*, 790 F.Supp.2d at 370 (internal quotation marks and citation omitted). "Rather, courts have looked to the degree to which a defendant insurer *knew* that it had no basis to deny the claimant; if delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred." *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 589 (E.D. Pa. 1999), *aff'd*, 234 F.3d 1265 (3d Cir. 2000) (citations omitted). While a showing of "mere negligence or bad judgment" is insufficient to prove a claim of bad faith,

4

*Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994) (quoting *Black's Law Dictionary* 139 (6th ed. 1990)), "proof of an insurer's motive of self-interest or ill-will, while potentially probative . . .[,] is not a mandatory prerequisite to bad faith recovery under Section 8371," *Rancosky*, 642 Pa. at 175.

      Defendant is entitled to summary judgment on Plaintiff's bad faith claim. Plaintiff's opposition to summary judgment premises her bad faith claim on the delay between the insurance adjuster's inspection of the property on December 5, 2019, and Defendant's payment on the undisputed amount of the loss on March 24, 2020, a period of 3 months and 19 days.[1] However, Plaintiff has failed to raise a material dispute of fact or point to clear and convincing evidence that this delay in paying her claim was without reasonable basis.[2] The undisputed facts provide an objectively reasonable justification for the delay: the investigation, preparation, and approval of the adjuster's estimate. *See J.C. Penney*, 393 F.3d at 367 ("A reasonable basis is all that is required to defeat a claim of bad faith" (citation omitted)). The adjuster promptly began preparing the estimate on the day of his inspection and submitted it to Defendant's management for review after he completed it on February 12, 2020. Between the site inspection and the

---

[1] Although Defendants note that it began making monthly payments for additional living expenses in December 2019 and disbursed over $100,000 in the months following the site inspection, Plaintiff's brief explains that her claim "is based on the unreasonable delay between Todd's inspection and the issuance of the payment of the undisputed amount of the claim." Accordingly, analysis here focuses on the time between the site inspection on December 5, 2019 and Nationwide's payment of the undisputed portion of the dwelling damages on March 24, 2020.

[2] Defendants repeatedly argue that Plaintiff's claim of bad faith delay fails because Plaintiff has yet to make repairs to the Property. This argument is without merit. It is undisputed that Plaintiff has at least made repairs to the Property's roof using the funds Nationwide disbursed in the December 2019 advance payment. But Plaintiff's use of the funds is not on point here: "the issue in connection with section 8371 claims is the manner in which insurers discharge their duties of good faith and fair dealing during the pendency of an insurance claim, not whether the claim is eventually paid," *Berg v. Nationwide Mut. Ins. Co.*, 44 A.3d 1164, 1178 (Pa. Super. 2012) (citation omitted), nor by extension how quickly the insured uses the payment to repair the insured's property. The timeline of Plaintiff's repairs to her Property after Nationwide paid her claim therefore is irrelevant for purposes of evaluating whether Nationwide's delay in investigating and paying her claim constituted bad faith for purposes Section 8371.

submission of the preliminary estimate, Defendant made a $15,000 advance payment on the dwelling damages, which also expanded in scope after the discovery of soot behind partition walls in the Property. Plaintiff submitted materials concerning damage to the Property's roof for the first time on February 26, 2020, weeks after the adjuster submitted his preliminary estimate, which suggests that the delay is not entirely attributable to Nationwide. Nationwide issued further payment on the dwelling damages approximately one month later, after the review, revision, and approval of the dwelling damages estimate. On these facts, no reasonable jury could find "clear, direct, weighty and convincing" evidence of bad faith delay.[3] *Id.*; *see also Great Lakes Reinsurance (UK) PLC v. Stephens Garden Creations, Inc.*, 119 F.Supp.3d 297, 306 (E.D. Pa. 2015) ("A delay attributable to the uncertainty of the claim's value or the insurer's need to investigate further does not constitute bad faith" (citation omitted)).

Although Plaintiff focuses on the delay between the adjuster's site inspection and the submission of his preliminary estimate, this, too, does not establish a bad faith delay. Even assuming that the delay in preparing the preliminary estimate was unreasonable, Plaintiff fails to point to clear and convincing evidence that Nationwide "knew or recklessly disregarded the fact

---

[3] Plaintiff contends that summary judgment should not be granted because the report of her bad faith expert opines that "Nationwide did not comply with commonly accepted claims practices and standards established in the Commonwealth of Pennsylvania." However, "[t]he mere presence of an expert opinion supporting the non-moving party's position does not necessarily defeat a summary judgment motion; rather, there must be sufficient facts in the record to validate that opinion." *Kosierowski*, 51 F.Supp.2d at 595 (citation omitted). Although the expert report states that "insurance carriers are expected to complete a repair estimate and issue . . . payment within three weeks of the site inspection," the expert report does not cite any authoritative source for this standard, nor explain what authoritative sources of prevailing insurance standards the expert reviewed, if any. Further, in concluding that Nationwide's delay in paying the dwelling damages claim fell short of accepted practices and standards, the expert report fails to factor into its analysis Nationwide's $15,000 advance payment on the dwelling damages shortly after the site inspection, nor address how the expansion of the scope of damages after the site inspection and Plaintiff's subsequent submission of materials documenting damage to the Property's roof contributed to the delay. The expert report observes that "[i]f staffing or claim volume contributed to the delay, Nationwide could have requested assistance from a building consultant or other vendor," but the report cites no authority for its implicit proposition that prevailing insurance standards and practices required Nationwide to do so. In short, Plaintiff's expert report does not present sufficient facts to validate its opinion that Nationwide fell short of accepted practices and standards in the context of this case, and therefore presents "no analysis or interpretation that would alter the court's conclusion as to the insufficiency of the evidence" of unreasonable delay presented here. *Id.*

that it had no reasonable basis to deny payment." *Thomer*, 790 F.Supp.2d at 370 (quotation marks and citation omitted). As Plaintiff notes, when Nationwide's adjuster was asked during his deposition why it took two months to prepare a preliminary estimate, he stated, "I don't have a reason." But the adjuster's testimony shortly thereafter in fact provided multiple reasons why two months was not an unreasonable length of time given the circumstances of Plaintiff's claim. The adjuster disagreed that the claim was "not complex" and that the delay was "unreasonable," explaining that the claim involved "more than cleaning and painting to [Plaintiff's] home," but also involved repairs to the roof, "removal of ceilings, [and] removal of floors." He also explained that he learned of the full scope of the damage to the Property only after the site inspection. Accordingly, this testimony does not establish by clear and convincing evidence that Nationwide knew or recklessly disregarded that it had no basis for the delay.

Relying on her expert report's finding that the adjuster appeared "overwhelmed or at least [was] feeling pressure from his volume of work," Plaintiff also contends that the adjuster "was too busy with other claims to address Plaintiff's claim in a timely manner," which Defendant disputes. However, the expert report's suggestion that the adjuster was "overwhelmed" or "pressure[d]," even taken as true, does not establish the adjuster's knowing or reckless disregard, and therefore does not defeat summary judgment. *See Terletsky*, 649 A.2d at 688 ("bad faith must be proven by clear and convincing evidence and not merely insinuated" (citations omitted)). At most, the evidence suggests "simple negligence" in the insurance adjuster's failure to complete the preliminary estimate more promptly. *Kosierowski*, 51 F.Supp.2d at 589 (citations omitted).

Because Plaintiff fails to raise any material disputes of fact or point to clear and convincing evidence of bad faith, Defendant's motion for summary judgment will be granted.

7

As Plaintiff's bad faith claim therefore will be dismissed, Defendant's motion to preclude the testimony of Plaintiff's bad faith expert will be denied as moot. An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**WENDY BEETLESTONE, J.**

**Date: 5/5/21**